# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>ASHINC Corporation, *et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 12-11564 (CSS)<br>(Jointly Administered) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET. AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS<br><br>        Appellant-Plaintiff,<br><br>BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P.,<br><br>        Intervenors,<br><br>        v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., and YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.,<br><br>        Appellees-Defendants. | Adv. Proc. No. 13-50530 (CSS)<br><br><br><br>Civ. No. 1:22-cv-00634 (CFC) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., as co-administrative agent, and SPECTRUM COMMERCIAL FINANCE LLC, as co-administrative agent,<br><br>        Appellant-Plaintiff,<br><br>        v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., and YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.,<br><br>        Appellees-Defendants. | Adv. Proc. No. 14-50971 (CSS)<br><br><br><br>Civ. No. 1:22-cv-00635 (CFC) |

134495421.1

**APPELLANT'S DESIGNATION OF THE RECORD ON APPEAL
AND STATEMENT OF THE ISSUES TO BE PRESENTED ON APPEAL**

I.  **Designation of Items to be Included in the Record on Appeal**

Appellant-Plaintiff Catherine E. Youngman, as Litigation Trustee (the "**Trustee**") for ASHINC Corporation (formerly known as Allied System Holdings, Inc.) and related Debtors ("**Allied**"), hereby designates the following items[1] to be included in the record on appeal and hereby states the issues to be presented on appeal pursuant to Federal Rule of Bankruptcy Procedure 8009(a)(1)(A).

**Adv. Pro. No. 13-50530 (CSS)**

| Adv. Pro. No. 13-50530 Docket No. | Date Filed or Submitted | Description |
| --- | --- | --- |
| 825 | 5/4/2021 | Opinion on Cross-Motions for Summary Judgment |
| 826 | 5/4/2021 | Order on Cross-Motions for Summary Judgment |
| 841 | 6/23/2021 | Judgment on Cross-Motions for Summary Judgment |
| 958 | 2/23/2022 | Defendants' Trial Brief |
| 960 | 2/23/2022 | Joint Pre-Trial Memorandum[2] |
| 961 | 2/23/2022 | Litigation Trustee's Pre-Trial Brief |
| 969 | 3/3/2022 | Transcript of Hearing Held 3/1/2022 (a.m. session) |
| 970 | 3/3/2022 | Transcript of Hearing Held 3/1/2022 (p.m. session) |

---

[1]  Unless otherwise indicated, the designation of each item includes any exhibits and/or attachment filed together with that item under the same docket number.  The designation also includes the sealed version of any document that was filed under seal.

[2]  Flash drives containing all trial exhibits were provided to the Bankruptcy Court on March 22, 2022 (*see* cover letter and combined exhibit list attached as **Exhibit A**) and flash drives containing highlighted transcripts and video clips of the parties' deposition designations and counter-designations were provided to the Bankruptcy Court on April 7, 2022 (*see* cover letter and list of deposition designations attached as **Exhibit B**).  Should Your Honor require additional copies of these flash drives, counsel for the Trustee is happy to provide them upon request.

134495421.1

| | | |
|---|---|---|
| **973** | 3/4/2022 | Transcript of Hearing Held 3/2/2022 (a.m. session) |
| **974** | 3/4/2022 | Transcript of Hearing Held 3/2/2022 (p.m. session) |
| **975** | 3/4/2022 | Transcript of Hearing Held 3/3/2022 |
| **977** | 3/7/2022 | Transcript of Hearing Held 3/4/2022 (a.m. session) |
| **980** | 3/8/2022 | Transcript of Hearing Held 3/4/2022 (p.m. session) |
| **981** | 3/8/2022 | Transcript of Hearing Held 3/7/2022 |
| **982** | 3/8/2022 | Transcript of Hearing Held 3/8/2022 |
| **990** | 3/16/2022 | Order Approving Stipulation Concerning the Authenticity and Admission of Certain Documents for Trial (Ex. 543, PX EE, PX FF) in Lieu of Testimony of Stephanie Bond |
| **994** | 3/17/2022 | Order Approving Stipulation in Lieu of Testimony of Catherine E. Youngman |
| **998** | 3/18/2022 | Transcript of Hearing Held 3/17/2022 |
| **1000** | 4/21/2022 | Stipulation Regarding Trial Exhibits |
| **1001** | 4/21/2022 | [SEALED] Litigation Trustee's [Proposed] Post-Trial Findings of Fact and Conclusions of Law |
| **1002** | 4/21/2022 | Defendants' Proposed Findings of Fact and Conclusions of Law |
| **1006** | 5/2/2022 | Findings of Fact and Conclusions of Law (CAS) |
| **1008** | 5/2/2022 | Judgment |
| **1010** | 5/12/2022 | Notice of Appeal |

**Adv. Pro. No. 14-50971 (CSS)**

| Adv. Pro. No. 14-50971 Docket No. | Date Filed or Submitted | Description |
|---|---|---|
| 563 | 5/4/2021 | Opinion on Cross-Motions for Summary Judgment |
| 564 | 5/4/2021 | Order on Cross-Motions for Summary Judgment |
| 579 | 6/23/2021 | Judgment on Cross-Motions for Summary Judgment |
| 694 | 2/23/2022 | Defendants' Trial Brief |
| 696 | 2/23/2022 | Joint Pre-Trial Memorandum |
| 697 | 2/23/2022 | Litigation Trustee's Pre-Trial Brief |
| 705 | 3/3/2022 | Transcript of Hearing Held 3/1/2022 (a.m. session) |
| 706 | 3/3/2022 | Transcript of Hearing Held 3/1/2022 (p.m. session) |
| 709 | 3/4/2022 | Transcript of Hearing Held 3/2/2022 (a.m. session) |
| 710 | 3/4/2022 | Transcript of Hearing Held 3/2/2022 (p.m. session) |
| 711 | 3/4/2022 | Transcript of Hearing Held 3/3/2022 |
| 713 | 3/7/2022 | Transcript of Hearing Held 3/4/2022 (a.m. session) |
| 716 | 3/8/2022 | Transcript of Hearing Held 3/4/2022 (p.m. session) |
| 717 | 3/8/2022 | Transcript of Hearing Held 3/7/2022 |
| 718 | 3/8/2022 | Transcript of Hearing Held 3/8/2022 |
| 726 | 3/16/2022 | Order Approving Stipulation Concerning the Authenticity and Admission of Certain Documents for Trial (Ex. 543, PX EE, PX FF) in Lieu of Testimony of Stephanie Bond |
| 730 | 3/17/2022 | Order Approving Stipulation in Lieu of Testimony of Catherine E. Youngman |
| 734 | 3/18/2022 | Transcript of Hearing Held 3/17/2022 |

| | | |
|---|---|---|
| **736** | 4/21/2022 | Stipulation Regarding Trial Exhibits |
| **737** | 4/21/2022 | [SEALED] Litigation Trustee's [Proposed] Post-Trial Findings of Fact and Conclusions of Law |
| **738** | 4/21/2022 | Defendants' Proposed Findings of Fact and Conclusions of Law |
| **742** | 5/2/2022 | Findings of Fact and Conclusions of Law (CAS) |
| **744** | 5/2/2022 | Judgment |
| **746** | 5/12/2022 | Notice of Appeal |

**II.    Statement of Issues to be Presented on Appeal**

On May 2, 2022, the Bankruptcy Court issued a Judgment[3] contemporaneous with entry of Findings of Fact and Conclusions of Law[4] with respect to the Trustee's "**Remaining Claims**" tried before the Bankruptcy Court in March 2022 for: (i) Breach of Fiduciary Duty (Estate Claim 7); (ii) Breach of the Implied Covenant of Good Faith and Fair Dealing (Lender Claim 3); and (iii) Equitable Subordination (Estate Claim 1/Lender Claim 1).[5]  Despite holding that Yucaipa breached its fiduciary duty to Allied's Estate and the implied covenant of good faith and fair dealing owed to Allied's First Lien Lenders, the Bankruptcy Court found that the Trustee failed to establish damages as a result of those breaches and that Yucaipa, therefore, should not be equitably subordinated.  (Findings at p. 120).  The 5/2/22 Judgment should be reversed.

Critically, the Bankruptcy Court erred by imposing a burden on the Trustee to establish damages that is inconsistent with what is required once a breach of fiduciary duty is found (under

---

[3]    13-50530, D.I. 1008; 14-50971, D.I. 744 (the "**5/2/22 Judgment**")

[4]    13-50530, D.I. No. 1006; 14-50971, D.I. Nos. 742 ("**Findings**").

[5]    The 5/2/22 Judgment provides that it "solely pertains to these Remaining Claims" and does not disturb an earlier Judgment entered on June 23, 2021, awarding the Trustee damages in the amount of $132,431,957.00 (inclusive of pre-judgment interest), plus post-judgment interest on Estate Claim 5 (Breach of Contract), and Estate Claims 10, 11, and 13 (Fraudulent Transfers and Disallowance Claims).  *See* 5/2/22 Judgment at n.1.

134495421.1

settled Delaware law) or a breach of the implied covenant of good faith and fair dealing is found (under settled New York law).  Given its breaches, Yucaipa bore the burden of establishing there was no likelihood of a deal with a highly-motivated third-party suitor for Allied named Jack Cooper Transport ("**JCT**") in late 2011 through spring 2012 (the "**JCT Negotiations**") for a higher price than the one that JCT ultimately paid for Allied in late 2013 — after Allied had been languishing in a bankruptcy for 18 months.  Further, any uncertainty in damages should have been resolved against Yucaipa as the wrongdoer.

Despite correctly finding that Yucaipa should have used its control over Allied to create a fair process to exploit JCT's interest in acquiring Allied — and that that Yucaipa's failure to do so and its "intransigence" killed the JCT Negotiations — the Bankruptcy Court failed to hold the uncertainties *caused by* Yucaipa's misconduct against it.  Instead, the Bankruptcy Court held that the Trustee could not prove her damages case because her estimate was based on a single "highly contingent" term sheet dated December 19, 2011, that it found was used "solely to maximize damages" and included certain unreasonable assumptions.  (*See, e.g.*, Findings at 6-7, ¶216).  These holdings erred by, among other things, overlooking that Yucaipa's misconduct prevented the term sheets exchanged during the JCT Negotiations from developing into a consummated transaction on equal terms for all Lenders.  Moreover, the holding ignored clear evidence in the record demonstrating that the Trustee presented a responsible a measure of damages that were not solely tied to the December 19, 2011, term sheet.  The Bankruptcy Court exacerbated these errors by relying on them in concluding that equitable subordination of Yucaipa's First Lien Debt holdings was unwarranted.

There are at least seven issues presented in this appeal:

*First*, whether the Bankruptcy Court erred by failing to award damages to the Trustee for Yucaipa's breaches, notwithstanding the Trustee's presentation of a responsible estimate of its

134495421.1

damages. *See Bomarko, Inc. v. International Telecharge, Inc.*, 794 A.2d 1161, 1181 (Del. Ch. 1999), a*s revised* (Nov. 16, 1999), *aff'd*, 766 A.2d 437 (Del. 2000) (once breach of fiduciary duty has been established "[r]esponsible estimates that lack mathematical certainty are permissible so long as the Court has a basis to make a responsible estimate of damages."); *see also Spectra Audio Rsch., Inc. v. Chon*, 62 A.D.3d 561, 564, 880 N.Y.S.2d 612, 616 (2009) (when proving damages, "evidence that, as a matter of just and reasonable inference, shows their existence and the extent thereof will suffice, even though the result is only an approximation.") (Citation omitted).

*Second*, whether the Bankruptcy Court erred by holding that any uncertainty in damages was not caused by Yucaipa — and should not be resolved against it — notwithstanding Yucaipa's established fiduciary breaches and the fact that its "intransigence" was held to have been the reason the JCT Negotiations ended abruptly in spring 2012. *See Auriga Cap. Corp. v. Gatz Props.*, 40 A.3d 839, 877 (Del. Ch.), *judgment entered*, No. 4390-CS, 2012 WL 598121 (Del. Ch.), *aff'd*, 59 A.3d 1206 (Del. 2012) (once a breach of fiduciary duty is established, the defendant "is responsible for the evidentiary uncertainty caused by his own disloyalty."); *see also Queens Ballpark Co. v. Vysk Commc'ns*, 226 F. Supp. 3d 254, 259 (S.D.N.Y. 2016) ("The burden of uncertainty as to the amount of damage is upon the wrongdoer.") (Citations omitted).

*Third*, whether the Bankruptcy Court erred by overlooking clear evidence in the record demonstrating that the Trustee was presenting a responsible estimate of the Estate's damages and Lender's damages resulting from Yucaipa's breaches. Such evidence includes, but is not limited to:

1. Testimony from the Trustee's damages expert, Jeffrey M. Risius, CFA/ABV, CFA, ASA, that he considered the full population of JCT term sheets exchanged during the JCT Negotiations in determining the price that JCT was willing to pay to acquire

Allied, contrary to the Bankruptcy Court's finding that Mr. Risius's analysis was "strategically based on a single, preliminary term sheet[.]" (Findings at ¶ 216).

2. JCT term sheets — subsequent to December 2011 — contemplating *higher* values to purchase Allied's assets than the implied value in the December 2011 term sheet, making clear that Mr. Risius, did not use the December 2011 term sheet "solely to maximize damages," contrary to the Bankruptcy Court's holding.[6]

3. Yucaipa's internal valuations of Allied reflecting an "Implied Enterprise Value" ranging from a low of $266 million to a high of $394.1 million;

4. Testimony from Yucaipa's Founder and Managing Principal (Ron Burkle) that Yucaipa and JCT "got to an agreement" during the course of the JCT Negotiations "and **everything about the agreement worked for everybody**. And as I said over and over the [automotive] industry was back and so the deal **would have worked**."

5. Yucaipa's judicial admissions that: (i) JCT was offering a pre-bankruptcy deal of $305 million to Allied's First Lien debt and (ii) a JCT sale would have been consummated at $170 million more than the ultimate $135 million if not for the May 2012 Bankruptcy filing;

6. Testimony and documents demonstrating JCT's willingness to pay a substantially higher value for Allied during the JCT Negotiations than it did following an 18-month, litigious bankruptcy resulting from "Yucaipa's intransigence" (Findings at ¶ 192), and that JCT was committed to credit bidding *all* First Lien Debt purchased in a pre-negotiated bankruptcy sale; and

---

[6] Among other errors, the Bankruptcy Court found that one of Allied's Lenders, CIT, had negotiated a most favored nations provision for any JCT deal in February 2012; however, the Bankruptcy Court overlooked this fact when concluding that the December 2011 Term Sheet was superseded by subsequent term sheets all contemplating *lower* values. (*Compare* Findings at ¶71 *with* Findings at p. 67).

134495421.1

7. Records reflecting tens of millions of dollars in avoidable expenses incurred by the Estate resulting from Yucaipa's intransigence and scorched-earth litigation tactics during Allied's 18-month bankruptcy prior to the JCT sale in December 2013.

*Fourth*, whether the Bankruptcy Court erred in failing to award damages to the Trustee on the grounds that there was no "reasonable basis" in the record to conclude that a deal with JCT would have been reached during the JCT Negotiations *after* concluding that Yucaipa "bore the burden of establishing there was no likelihood of a JCT transaction" and that Yucaipa "did not carry this burden at Trial." (Findings at ¶¶ 180, 216).

*Fifth*, whether the Bankruptcy Court erred in denying the Trustee's equitable subordination claim on the grounds that the Trustee failed to carry her burden of proving that Allied or the Lenders suffered damages as a result of Yucaipa's conduct in connection with the JCT Negotiations after applying an erroneous burden on the Trustee on that underlying issue.

*Sixth*, whether the Bankruptcy Court erred in denying the Trustee's equitable subordination claim on the grounds that the Trustee failed to present evidence that Yucaipa caused Allied to commit events of default under Allied's First Lien Credit Agreement notwithstanding evidence presented and the Court's holdings that, among other things, Yucaipa: (i) "dominated every aspect of Allied's capital structure and business" (Findings at ¶171), (ii) "wielded its control over Allied as bargaining power that reflected 'inappropriate favoritism'" (*id.* at ¶175), (iii) strategically agreed to pay only *one* First Lien Lender's principal and interest owed after August 2009 (*id.* at ¶¶ 18-23), (iv) continually breached the First Lien Credit Agreement by, among other things, preventing the First Lien Lenders receipt of principal and interest payments, withholding financial information about Allied, withholding reasonable access to Allied's management, and filing multiple lawsuits and claims relating to the First Lien Credit

Agreement,[7] and (v) ultimately refused to ensure equal and ratable treatment for First Lien Lenders during negotiations with JCT in spring 2011 and, again, during the JCT Negotiations (*see, e.g., id.* ¶¶ 50-53, 97, 101).

*Seventh*, whether the Bankruptcy Court erred in denying the Lenders' equitable subordination claim on the grounds that "BD/S are the only meaningful beneficiaries of any awards in this litigation" which ignores, among other things, that (i) BD/S funded years of litigation, including years of defending itself from Yucaipa's scorched-earth litigation tactics, and (ii) other Lenders stand to benefit under the court-approved Litigation Waterfall. (Findings at ¶ 237).

---

[7]   13-50530, D.I. 825; 14-50971, D.I 563 (Summary Judgment Opinion dated May 5, 2021, at 41-46)

134495421.1

Dated  May 26, 2022
       Wilmington, DE

**FOX ROTHSCHILD LLP**

*/s/ Seth A. Niederman*
Seth A. Niederman, Esq. (No. 4588)
919 North Market Street, Suite 300
Wilmington, DE  19899-2323
Phone (302) 654-7444/Fax (302) 656-8920
sniederman@foxrothschild.com

-and-

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph
Gila S. Singer
485 Lexington Avenue, 30th Floor
New York, NY  10017
Tel: (212) 407-1200
gjoseph@jha.com

-and-

**ZAIGER LLC**
Jeffrey H. Zaiger
Judd A. Lindenfeld
2187 Atlantic Street, 9th Floor
Stamford, CT 06902
Telephone: (917) 572-7701
jzaiger@zaigerllc.com

*and*

**COHEN & GRESSER LLP**
Douglas J. Pepe
800 Third Avenue
New York, NY 10022
Tel: (212) 957-7605
dpepe@cohengresser.com

*Attorneys for Appellant-Plaintiff*

4854-0395-5233

134495421.1